Colin M. Thompson, Esq.
Thompson Law Office, LLC.
J.E. Tenorio Building
PMB 917 Box 10001
Saipan, Mariana Islands 96950
Telephone: (670) 233-0777
Facsimile: (670) 233-0776

*Attorney for Defendants Federated Sector Enterprises, LLC
and Ferdinand G. Aranza*

F I L E D
Clerk
District Court

SEP -3 2008

For The Northern Mariana Islands
By_____
(Deputy Clerk)

# IN THE UNITED STATES DISTRICT COURT

## FOR THE

## NORTHERN MARIANA ISLANDS

COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS
                    Plaintiff,

v.

FEDERATED SECTOR ENTERPRISES, LLC
and FERDINAND G. ARANZA.

                    Defendants.

CIVIL ACTION NO. 08- **0035**

NOTICE OF REMOVAL

(28 U.S.C. § 1441. *et seq.*)

## NOTICE OF REMOVAL

TO:    THE HONORABLE ALEX R. MUNSON, CHIEF JUDGE.
       DISTRICT COURT FOR THE NORTHERN MARIANAS ISLANDS

Petitioners, Ferdinand G. Aranza and Federated Sector Enterprises, LLC are named as defendants in the above-entitled matter filed in the Superior Court for the Commonwealth of the Northern Mariana Islands and reserving all defenses and objections, joint or separate: They state:

1.      Petitioners hereby assert their right under the provisions of 28 U.S. C. § 1441. *et seq.*, to remove this action from the Superior Court of the Commonwealth of the Northern Mariana

1

Islands, Saipan, in which said action is now pending under the above-captioned title as Civil Action No. 08-0264.

2.      This is an action in which Federal District Court has original jurisdiction based upon diversity jurisdiction pursuant to 28 USC § 1332.

3.      Plaintiff and Defendants are completely diverse in that none of the Defendants are of the same residency as the Plaintiff.

4.      Plaintiff alleges damages in excess of $75,000.00.

5.      Pursuant to  28 U.S.C. § 1441, a copy of this Notice if Removal is being filed with the Clerk for Superior Court of the CNMI, and this Notice of Removal is being served on all adverse parties.

7.      Petitioners reserve the right to amend or supplemental this Notice of Removal.

**WHEREFORE**, Petitioners do hereby remove the action now pending against them in the Superior Court of the CNMI, Saipan, as Civil Action No. 08- 0264, to this Court.

Dated this 2nd day of September, 2008.

/s/ Colin M. Thompson
**COLIN M. THOMPSON, Esq.**
Thompson Law Office, LLC

1  MEAGHAN HASSEL SHEARER #T0052
   Assistant Attorney General
2  MATTHEW T. GREGORY #F0205
   Attorney General
3  OFFICE OF THE ATTORNEY GENERAL
   Hon. Juan A. Sablan Memorial Bldg., 2nd Fl.
4  Caller Box 10007, Capital Hill
5  Saipan, MP 96950-8907
   Telephone:    (670) 664-2341
6  Fax:          (670) 664-2349

7  Attorneys for Plaintiff Commonwealth of the
8  Northern Mariana Islands (CNMI)

E-FILED
CNMI SUPERIOR COURT
E-filed: Jul 9 2008 3:54 PM
Clerk Review: Jul 10, 2008
Filing ID: 20561741
Case Number: 08-0264-CV
Elsa Duenas

9
10
11

12            **IN THE SUPERIOR COURT**
              **OF THE**
13  **COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS**

14  COMMONWEALTH OF THE          )  Civil Action No.
    NORTHERN MARIANA ISLANDS     )
15                               )
                                 )
16           Plaintiff           )
                                 )  **COMPLAINT**
17            vs.                )
                                 )
18                               )
    FEDERATED SECTOR ENTERPRISES,)
19  LLC, and FERDINAND G. ARANZA,)
                                 )
20          Defendants.          )
                                 )
21  _____ )

22
23
24

25       Plaintiff, by and through counsel, hereby files its Complaint and in support thereof

26  alleges as follows:

27
28
--

# I.

## PARTIES

1.      Plaintiff Commonwealth of the Northern Mariana Islands (hereinafter "CNMI"), is a self-governing commonwealth government established under the authority of the Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union with the United States of America (hereinafter "Covenant"), Act of Mar. 24, 1976, Pub.L. 94-241, 90 Stat. 263, reprinted in 48 U.S.C. § 1801 note (2000).

2.      Defendant, Federated Sector Enterprises, LLC. (hereinafter "FSE") is a professional corporation organized under the laws of Guam.

3.      Defendant, Ferdinand G. Aranza (hereinafter "Aranza"), on information and belief, is now, and was at all times mentioned herein, president of FSE.

# II.

## JURISDICTION

4.      This court has jurisdiction over this lawsuit because it is a case involving the Commonwealth Procurement laws.  N.M.I. Const. art. IV, § 2; 5 CMC § 1103.

# III.

## VENUE

5.      Venue is placed in this district because it is where the events complained of occurred.

## IV.

## FACTUAL ALLEGATIONS

6.    Plaintiff brings this claim for relief from a proposed agreement that failed
to comply with the Commonwealth Procurement Regulations and was fraudulent.

### I. Commonwealth Procurement Regulations

7.    The Commonwealth Constitution requires that the Department of Finance
"control and regulate the expenditure of public funds." N.M.I. Const. art X, § 8.  Under
this authority, the Department of Finance has the duty for control of procurement and
supply of goods and services by the government.  2 CMC § 2553(g),(j).

8.    The Department of Finance is authorized to adopt rules and regulations to
aid in the performance of its duties.  2 CMC § 2557.

9.    The Commonwealth Procurement Regulations (hereinafter "Com. Proc.
Reg.") were adopted under the authority of the Department of Finance to control and
regulate expenditures of the Commonwealth.  NMIAC §70-30.3-005.

10.    Commonwealth Procurement Regulations apply to:
> *"every expenditure of public funds* irrespective of source,
> including federal assistance monies and Covenant funds.  These regulations
> apply to all agencies, department branches of the government, political
> subdivisions, public corporations and agencies of local government of the
> Commonwealth."

NMIAC § 70-30.3-020 (emphasis added).

**II. Procurement of Services**

11.    Commonwealth Procurement Regulations provides eight different methods for procurement: (1) competitive sealed bidding; (2) competitive sealed proposals (3) small purchase; (4) emergency procurement; (5) expedited procurement; (6) sole source procurement; (7) architect-engineer services or (8)competitive selection procedures for professional services.  NMIAC § 70-30.3-205(a).

**a.    Competitive Sealed Bidding**

12.    The competitive sealed bidding procurements structure emphasizes the selection of services based on price and meeting the requirements of the bid. NMIAC § 70-30.3-205(m)(1).

13.    This process requires the provision of adequate notice of the need for the identified services through establishment of a request for bids.  NMIAC § 70-30.3-205(f).

14.    Awards for these contracts shall be made to the offeror who has the "lowest responsive bid by a responsible bidder whose bid fully meets the requirements of the invitations.  NMIAC § 70-30.3-205(m)(1).

**b.    Competitive Sealed Proposals**

15.    The competitive sealed proposals procurement structure emphasizes the selection of professional services based on whose proposal is "determined in writing to be most advantageous to the government taking into consideration price and the evaluation factors" NMIAC § 70-30.3-210(h).

16.    This process requires the provision of adequate notice of the need for the identified services through establishment of a request for proposals. NMIAC § 70.3-210(c).

17.    The request for proposal shall list the services required, the information required of each offeror, and the importance of each qualification. NMIAC § 70-30.3-210(e).

18.    Award of these contracts shall be made to the offeror determined by the Procurement and Supply Director to be the best qualified based on the evaluation of factors set forth in the request for proposals and negotiations of compensation determined to be fair and reasonable. NMIAC §70-30.3-210(h).

c.    Small Purchase Procurement

19.    The use of the small purchase procurement procedures for services is limited to procurement of services under $10,000.  NMIAC § 70-30.3-220(c).

20.    Under these procedures, "the official with expenditure authority must obtain price quotes from at least three (3) vendors and base the selection on competitive price and quality." NMIAC § 70-30.3-220(c).

21.    Any price quotations must be documented and submitted to the Procurement and Supply Director for approval.  NMIAC § 70-30.3-220(c).

d.  Sole Source Procurement

22.    A fourth alternative method that can be used for procurement of services is the use of sole source procurement.  NMIAC § 70-30.3-225.

23.    Under sole source procurement, the official with expenditure authority must provide specific written justification indicating the unique capabilities of the contractor selected; the specific reasons why such unique characteristics are required;

what specific efforts were made to obtain competition; and what other specifically named

contractors were considered and why they were not selected.  NMIAC § 70-30.3-225(b).

24.     In order to use the sole source procurement procedures, the Procurement

and Supply Director must determine in writing that there is only one source for the

required services.  NMIAC § 70-30.3-225(a)(1).

### e.  Emergency Procurement Procedures

25.     The fifth method for procurement of services authorized by the

Procurement Regulations is the Emergency Procurement procedures.

NMIAC § 70-30.3-230.

26.     Under these regulations, the government may make an emergency

procurement "when there exists a threat to public health, safety or welfare under

emergency conditions."  NMIAC § 70-30.3-230(a).

27.     In order to use these procurement procedures, a written justification of the

basis of the emergency and for the selection of the particular contractor must be made with

the official with expenditure authority and approved by the Director of Procurement and

Supply.  NMIAC § 70-30.3-230(b)and(c).

### f.  Expedited Purchasing in Special Circumstances

28.     The sixth approved method for procurement of services is Expedited

Purchasing in Special Circumstances.  NMIAC § 70-30.3-235.

29.     Under this procurement method, "when special circumstances require the

expedited procurement of goods and services ... the official with expenditure authority

may request that the Director approve expedited procurement without the solicitation of bids or a proposal." NMIAC § 70-30.3-235

30.     These procurement procedures are only authorized when it is established after consideration of : (1) the urgency of the government's need for the goods or services; (2) the comparative costs of procuring the goods or service from a sole source or through the competitive process; (3) the availability of the goods or services; and (4) the best interest of the Commonwealth. NMIAC § 70-30.3-235(b).

31.     Written determination by the Director of Procurement and Supply that these factors justify the use of the expedited procurement procedures is required. NMIAC § 70-30.3-235(c).

32.     The total amount of goods and services that can be procured under this method is $25,000. NMIAC § 70-30.3-235(f).

### g. Architect-Engineer Services

33.     The seventh approved method for the procurement of services is specifically tailored to architects and engineers. NMIAC § 70-30.3-305(a).

34.     Procurements of this type are awarded on the basis of demonstrated competence and qualifications at a fair and reasonable price. NMIAC § 70-30.3-305(b).

### h. Competitive Selection Procedures for Professional Services

35.     The last method for procurement of services is competitive selection of professional services. NMIAC § 70-30.3-310.

36.     This method is used only for the professional services of "accountants, physicians or lawyers."  NMIAC § 70-30.3-310(a).

**III.  Required Contract Review, Processing and Oversight**

37.     In addition to the procedural requirements of Commonwealth procurement, specific steps must be followed in order to ensure required contract review, processing, and oversight to ensure that the commitment of Commonwealth resources is appropriate. NMIAC § 70-30.3-115.

38.     In order to ensure that the required contract review, processing, and oversight is provided prior to finalization of any contract, the Procurement Regulations establish specific duties of identified parties in the processing of all commitments of Commonwealth resources.  NMIAC. § 70-30.3-115(a) –(j).

39.     In order to ensure that the officials with responsibility of oversight of procurement have reviewed any commitment of resources, signatures of the officials with identified responsibility are required.  NMIAC. § 70-30.3-115(a) –(j).

40.     In total, each Commonwealth expenditure requires seven points of oversight and authorization prior to receiving formal approval to engage in an expenditure contract.  NMIAC. § 70-30.3-115(a) –(j).

41.     "No Commonwealth contract is valid without all of the parties whose signatures are required on the contract form have signed the contract.  NMIAC § 70-30.3-115(j).

42.     The first signature required is that of the official with expenditure authority.  NMIAC § 70-30.3-115(j).

43.     The signature of the individual with expenditure authority indicates that the proposed contract is for a public purpose and does not constitute a waste or abuse of public funds.  NMIAC § 70-30.3-115(a).

44.     Additionally, the official with expenditure authority is required to attest that all required contract documents are complete according to the requirement of the Procurement regulations.  NMIAC § 70-30.3-115(a).

45.     Upon signature by the official with Expenditure authority, he/she is to provide a copy of the proposed expenditure to the Director of Procurement and Supply. NMIAC § 70-30.3-115(a).

46.     The second required review is that of the Procurement and Supply Director. At this step, the Procurement and Supply Director may at his discretion refer any proposed expenditure to the Public Auditor for review under his authority to prevent fraud, waste, or abuse in the expenditure of public funds. NMIAC § 70-30.3-115(b); 2 CMC §§ 2301, 2303, 2304.

47.     The third step in the expenditure approval process is approval by the Secretary of Finance.  NMIAC § 70-30.3-115(c).

48.     The purpose of the review by the Secretary of Finance is to certify the availability of funds for the identified expenditure.  NMIAC § 70-30.3-115(c).

49.     The fourth level of review is that of the Attorney General who shall certify the proposed expenditure agreement as to form and legal capacity. NMIAC § 70-30.3-115(d).

50.    The fifth level of review is specific authorization of the expenditure by the Governor.  NMIAC § 70-30.3-115(e).

51.    Upon approval by the Governor, the expenditure authorization is returned to the contractor for approval of the agreement as proposed.  NMIAC § 70-30.3-115(f).

52.    The final step in the establishment of an expenditure contract with the Commonwealth is the final review by the Director of Procurement and Supply to ensure that all steps in the procurement process has been properly followed. NMIAC § 70-30.3-115(g).

53.    No contract is effective against the Commonwealth until all of the parties whose signatures are required on the contract under the Commonwealth Procurement Regulations have signed the contract.  NMIAC §70-30.3-115(j).

54.    Upon final approval of the expenditure, the Expenditure Authority is required to provide copies of the final contract to the Office of the Attorney General and Secretary of Finance.  NMIAC § 70-30.3-115(g)(1)-(2).

**IV. Change Order**

55.    Furthermore, specific steps must be followed to process a change order. NMIAC §70-30.3-410.

56.    Change orders are only allowed if there is an increase, decrease, or change in the scope of the work, which was not reasonably known when the contract was formed. NMIAC §70-30.3-410(a).

57.     Prior to okaying a change order, the Director of Procurement and Supply must decide whether competition should be sought for the services or goods to be purchased.  NMIAC §70-30.3-410(b).

58.     All change orders shall be processed using the procedures for processing new contracts as explained in Section III of Factual Allegations. NMIAC §70-30.3-410(c).

**V.  Contract No. 404758 – OC – Consultant to the Governor for Homeland Security Grants Services**

59.     On March 12, 2003, former Governor Juan N. Babauta (hereinafter "Governor") met with Aranza and Guam Congressman Underwood.

60.     The purpose of the meeting was to discuss the growing pressures that the White House was placing on strengthening homeland security and how Aranza's company FSE could help.

61.     Afterwards, Aranza sent the Governor a $200,000 proposal to review on how the FSE could aid the CNMI in increasing its homeland security funding.

62.     The proposal had four phases:

    i.  FSE would identify the agencies in the CNMI that could benefit from Homeland security funding;

    ii.  FSE would identify grants that were applicable for these agencies;

  iii.  FSE would aid the agencies in filing the applications; and

  iv.  if the grants were awarded, FSE would be first to be considered

    for carrying out the duties of the grant.

63. The Commonwealth Port Authority ("CPA"), one of the agencies involved in the contract questioned the fourth phase of the proposal because it failed to comply with the procurement regulations requiring open biding on contracts awarded using federal grants.

64. FSE assured the government that the fourth phase would not force the CNMI to reward FSE all contracts using homeland security grants but rather allow FSE to be the first to apply.

65. On August 8, 2003, the contract between the CNMI and FSE was signed.

66. Then in or around October 2003, Aranza began discussing a Second Amendment to the contract that would allow for his company to help CPA prepare the facility, vessel and port security plans required by the International Ship and Port Facility Code and the Maritime Port Security Act.

67. Aranza argued that if the CNMI did not submit a plan by December 31, 2003, the CNMI would no longer be allowed to receive any international cargo at its ports.

68.    On or around October 24, 2003, Pamela S. Brown, former Attorney General, wrote Aranza an email stating "The International Ship and Port Facility Code Security Plan for the CNMI is not due until April 2004 thanks to an extension granted by DHS."

69.    After receiving this email, Aranza faxed the Governor's hotel room in Japan the proposed amendment and informed the Governor that he and Congressman Underwood would be calling at 10 pm on Sunday to discuss the need to amend the contract.

70.    Then on November 1, 2003, in an email to Carlos Salas, former CPA Executive Director, Aranza stated "The Governor's office intends to proceed with an amendment to FSE's existing contract to provide homeland security support services to the CNMI.  If you are able to give me an informal "intent to retain/proceed" message by e-mail on Monday your time, the Governor's Legal Counsel is available to help CPA/CUC process the contract amendment for the port security plan."

71.    The cost of the port security plan was broken down into billable hours and travel expenses for a total price of $108,240.00.

72.    On July 29, 2004, the US Coast Guard sent a letter to Salas, stating that the plan had been accepted.

73.    Then on November 18, 2005 Aranza wrote the Governor stating that the final invoice for the port security plan was $136,704.72.

74.    On January 19, 2006, Aranza received the final payment for the port security plan.

75.    At no time did the Second Amendment go to the Department of Finance for the Director of Procurement and Supply to review and approve the document.

76.    Neither the Attorney General, Department of Finance, Contractor, Director of Procurement and Supply or the Governor ever signed the Second Amendment.

77.    The Second Amendment was a departure from the original contract, as it applied to the fourth phase of the original contract, asking for the FSE to only be considered first for any new contracts dealing with Homeland security funds.

78.    Therefore, the Second Amendment was not an amendment but rather a new contract.

79.    Furthermore, FSE fraudulently reported the hours that they worked on the project.

80.    Many sections of the port security plan are verbatim from the United States Coast Guard regulations (hereinafter "USCG Regulations").

81.    And in other sections, the plan merely rephrases the USCG Regulations.

82.    Therefore, the over 618 hours of billable work that FSE charged the CNMI government is not plausible.

## V.

## CAUSES OF ACTION

**First Cause of Action**
**Violation of Procurement Regulations For Contract**
**(Alleged against Defendants FSE and Aranza)**

**I. Noncompliance with Required Procurement Procedures**

83.    Plaintiff repeats and realleges, and incorporates herein by reference, paragraphs 1 –82.

84.    The Defendants violated the procurement regulations that are necessary to create a contract.

85.    The services identified in the Second Amendment are controlled by the Commonwealth Procurement Regulations.  NMIAC §70-30.3-020.

86.    As such this procurement must use any one of the eight methods provided in the Commonwealth Procurement Regulations for retention of services (competitive sealed bidding; competitive sealed proposals; small purchases; sole source; expedited purchasing; emergency procurement; architect-engineer services; or competitive selection procedures for professional services.) NMIAC §§70-30.3-210, 30.3-220, 30.3-225, 30.3-230, 30.3-235, 30.3-305, 30.3-310.

87.    The Second Amendment did not comply with any of the eight approved methods of procurement.

88.    Under the requirements of the Procurement Regulations, the retention of services must use the procedures of Competitive Sealed Bidding unless they qualify for one of the seven limited exceptions. NMIAC. § 70-30.3-205.

89.    The specific characteristics of the services identified in the Second Amendment preclude the use of these methods of procurement (1) small purchase - $10,000 limit. NMIAC. § 70-30.3-220(c); (2). expedited purchasing - $25,000 limit, NMIAC § 70-30.3-235(f); (3) architect-engineer services –is designed only for the services of architects or engineers, NMIAC § 70-30.3-305(a); and (4) competitive selection procedures for professional services – is designed only for the services of accountants, physicians and doctors, NMIAC § 70-30.3-310(a).

90.    Furthermore, both Competitive Sealed Bidding and Competitive Sealed Proposals require the publication of notice that the government was accepting bids for a project.  NMIAC § 70-30.3-205(e)(1)(requiring a minimum bidding time of 30 calendar days), NMIAC § 70-30.3-210(c).

91.    No notice was posted concerning the government's need for an individual or company to create a port security plan.

92.    Under the Sole Source procurement method, the director must determine in writing that there is only one source for the required service.  NMIAC § 70-30.3-225(a)(1).

93.    At no point in the discussion of the Defendants contracting to create a port security plan did the Director determine in writing that the Defendants were the only ones capable of this service.

94.    Accordingly, the only method available is Emergency Procurement.

95.    Although emergency procurements can be made for the welfare of the people, which is what the Defendants argued it was, it requires the Procurement and Supply Director to show his approval in writing.  NMIAC § 70-30.3-230(c).

96.    At no time did the Procurement and Supply Director demonstrate his approval of the Second Amendment in writing.

97.    As such, the second Amendment is void.  NMIAC § 70-30.3-030.

**II.  Noncompliance With Required Contract Review, Processing and Oversight**

98.    The Second Amendment is in violation of the requirement for specific contract review, processing and oversight.  NMIAC § 70-30.3-115.

99.    The Commonwealth Procurement regulations require signed documentation attesting to specific contract review and oversight and distribution of the approved contract.  NMIAC § 70-30.3-115(a)-(j).

100.    Contract review and oversight is indicated in the signatures required on each contract for legal services:

        a.)  Official with Expenditure Authority
        b.)  Procurement and Supply Director
        c.)  Secretary of Finance
        d.)  Attorney General
        e.)  Governor
        f.)  Contractor
NMIAC § 70-30.3-115(a)-(f).

101.    No contract is effective against the Commonwealth until all of the parties required by the Procurement regulation have affixed their signatures. NMIAC § 70-30.3-115(j).

102.    In this case, there are no signatures as the Second Amendment was never finalized nor accepted.

103.    The Second Amendment does not comply with the Procurement regulations, as it did not follow the procedures nor meet the requirements for any of the eight methods.  NMIAC § 70-30.3-205(a).

104.    Additionally, in this case the Defendants encouraged the CPA director to give the go-ahead in an email, in order that the Defendants may start performing on a contract before it went through all the necessary government agencies.

**III. Second Amendment was not a Change Order**

105.    The Second Amendment proposed to do work outside of the scope of the original contract.

106.    The original contract proposed that the Defendant would aid the CNMI in finding and receiving homeland security funding, and if they did receive the funding, FSE would be considered first for the contract.

107.    The Second Amendment was to design a security plan for the ports using homeland security funding.

108.    Therefore, the Second Amendment was FSE's proposal for creation of a security plan.

109.    A new contract should have been processed.

110.    Accordingly, the Second Amendment was not an amendment and failed to comply with the procurement regulations necessary for contracts.

111.    Whereas, Plaintiff prays for relief as set forth below.


**Second Cause of Action**
**Fraud**
**(Alleged Against Defendant Aranza)**

112.    Plaintiff repeats and realleges, and incorporates herein by reference, paragraphs 1 –111.

113.    In an attempt to induce Plaintiff to amend its original contract, Defendant Aranza placed the Plaintiff in apprehension that only his company FSE could write an international port security plan by the deadline of December 31, 2003.

114.    Defendant Aranza repeatedly stating that the plan had to be finished by December 31, 2003 and arranged late night phone calls with the Governor in Japan and Aranza and Congressman Underwood.

115.    The Defendant stated that the April extension that the Attorney General had been told was not accurate.

116.    The Defendant quoted the Plaintiff a price of $108,240.00.

117.    However, the Defendant's final price was approximately $30,000 more than the quoted price.

118.    The Defendant told CPA that they should just give FSE an informal go-ahead while the Governor processed the paperwork.

119.    No paperwork was being processed.

120.    Defendant intentionally, knowingly, or otherwise culpably concealed or suppressed from the Plaintiff that the USCG Regulations outlined the necessary provisions for every port's security plan.

121.    Defendant fraudulently concealed or suppressed the fact that sections of the security plan that his company wrote for the CNMI were taken directly from the USCG Regulations.

122.    Defendant fraudulently concealed or suppressed the fact that sections of the security plan that his company wrote for the CNMI were paraphrased from the USCG Regulations.

123.    The Defendant fraudulently led the Plaintiff to believe that FSE worked over 618 hours on the plan when the design and many sections came from the USCG Regulations.

124.    The Plaintiff was unaware of the concealed or suppressed facts and would have taken action had it known the true facts.

125.    The omissions and representations of the Defendant were material, false and misleading, and the Defendant knew they were false and misleading at the time they were made, and they were made for the purpose of inducing the Plaintiff to rely upon them and to act or refrain from acting in reliance thereon.

126.    Plaintiff reasonably and justifiably relied upon untruthful representations, statements and omissions and acted in accordance thereof.

127.    As a direct and proximate result of Defendant's conduct detailed above and in other respects, the CNMI has been damaged in an amount to be proven at trial.

128.    Because of the willful, wanton, vile, outrageous, and intentional nature of the Defendant's conduct as alleged herein, Defendants are liable for punitive damages, in an amount to be determined at trial.

129.    Whereas, Plaintiff pray for the relief as set forth below.

**Third Cause of Action**
**Unjust Enrichment**
**(Alleged against Defendants FSE and Aranza)**

130.    Plaintiff repeats and realleges, and incorporates herein by reference, paragraphs 1 –129.

131.    The Defendants charged the plaintiff $136,704.72 for the international port security plan.

132.    The Defendants inflated the amount of hours spent designing the plan.

133.    The Defendants copied sections of the USCG in order to create the security plan.

134.    The Defendants were unjustly enriched.

# VI.

## PRAYER

135.    WHEREFORE, Plaintiff prays for relief as follows:

      a.      For general, consequential and compensatory damages.

      b.      For punitive damages.

      c.      For attorney's fees and costs of suit.

      d.      For such other and further relief as the Court deems appropriate.

Respectfully Submitted

Commonwealth of the Northern Mariana Islands

By Their Attorneys,

OFFICE OF THE ATTORNEY GENERAL

Date: July 9, 2008

_____/s/_____
Meaghan Hassel-Shearer (T0052)
Assistant Attorney General